# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

128 INCORPRATED, WEST EDGE II,
INC., DUVAL AT GULF HARBORS, LLC,
and WEST EDGE, INC.,

      Appellants,

v.                                        Case No: 8:16-cv-32-T-17

PREMIUM MORTGAGE, INC. and MARK
C. HEALY, PLAN ADMMINISTRATOR,

      Appellees.

_____

## ORDER

      This cause came before the Court pursuant to the appeals filed by Appellants, 128 Incorporated, West Edge, Inc., West Edge II, Inc., and Duval at Gulf Harbors, LLC (the "**Appellants**") of orders entered by the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") confirming the chapter 11 plans of liquidation filed Premium Mortgage, Inc. ("**PMI**") and denying the motion to dismiss or convert the Appellants' bankruptcy cases filed by the United States Trustee (the "**UST**").   For the reasons set forth below, the Bankruptcy Court's orders are **AFFIRMED**.

**I.**      **Jurisdiction and Standard of Review**

      This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C § 158(a).   The Court reviews determinations of law made by a bankruptcy court *de novo* and findings of fact for clear error. *Helmer v. Pogue (In re Pogue)*, 567 F.App'x 894, 896 (11th Cir. 2014).   "Moreover, we review a bankruptcy court ruling on the reasonableness of attorney's fees for abuse of discretion." *Id.*

## II.      Background

### A.      Procedural History

The Appellants commenced this appeal by filing second amended notices of appeal on January 5, 2016.  The notices of appeal were docketed as Cases 8:16-cv-32 (the "**32 Case**") and 8:16-cv-33 (the "**33 Case**").   The 33 Case was originally assigned to Hon. Mary S. Scriven, but was transferred to this Court on January 28, 2016. (33 Case, Doc. No. 9).   On February 2, 2016, this Court entered an order consolidating the two cases, and directing that all further pleadings be filed in the 32 Case. (33 Case, Doc. No. 12).

The Appellants filed their *Appellants' Brief* (Doc. No. 11) (the "**Initial Brief**") on March 24, 2016.   Through their Initial Brief, the Appellants argue that the Bankruptcy Court abused its discretion by: (1) failing to dismiss or convert the Appellants' bankruptcy cases based on the Appellants' failure to file amended chapter 11 plans prior to the November 12, 2015 deadline set by the Bankruptcy Court; (2) allowing PMI to withdraw its 1111(b) elections with respect to certain chapter 11 plans filed by the Appellants; and (3) refusing to allow Camille Iurillo, Esq. to access $50,000.00 in the Appellants' debtor-in-possession accounts to funder her retainer.   The Appellee, Mark C. Healy, Plan Administrator (the "**Appellee**"), filed his *Answer Brief of Appellee Mark C. Healy* (Doc. No. 19) (the "**Answer Brief**") on April 25, 2016.   The Appellants filed their *Reply Brief* (Doc. No. 21) (the "**Reply Brief**") on May 12, 2016.

### B.      Factual History

This appeal traces its origins to April 1, 2014 and May 19, 2014, when the Appellants filed voluntary petitions under Chapter 11 of the Bankruptcy Code. (Doc. Nos. 9-10, 9-184, 9-228; 33 Case, Doc. No. 4-7).   The cases filed by West Edge, Inc., West

Edge II, Inc., and Duval at Gulf Harbors, LLC were jointly administered pursuant to an order of the Bankruptcy Court dated December 13, 2014. (Doc. No. 9-57). According to the Appellants' bankruptcy schedules, the Appellants' primary assets consisted of real property located in Sumter, Pasco, and Citrus County, Florida. (Doc. Nos. 9-12, 9-186, 9-230; 33 Case, Doc. No. 4-10). PMI was the Appellants' primary creditor pursuant to loans secured by mortgages on the Appellants' real property. *Id.* The Appellants' principal was Harry Pappas. *Id.*

Between July, 2014 and September, 2015, the Appellants filed numerous chapter 11 plans. In response to the plans filed by West Edge, Inc., West Edge II, Inc., and Duval at Gulf Harbors, LLC on April 14, 2015, PMI made elections to have its claims treated as fully secured pursuant to Section 1111(b) of the Bankruptcy Code. (Doc. Nos. 12-14; 14-13; 14-17). On July 7, 2015, following PMI's 1111(b) elections, West Edge, Inc., West Edge II, Inc., and Duval at Gulf Harbors, LLC filed revised chapter 11 plans. (Doc. Nos. 12-15, 12-16, 12-17). On August 14, 2015, rather than accept the treatment provided to it under the Appellants' most recent chapter 11 plans, PMI filed its own chapter 11 plans proposing to liquidate the Appellants' assets. (Doc. No. 12-4, 12-18). On September 4 and September 21, 2015, the Appellants filed additional revised chapter 11 plans with the Bankruptcy Court. (Doc. Nos. 12-5, 12-19, 12-20, 12-21). PMI did not make 1111(b) elections with respect to the revised plans, and on September 21, 2015, filed notices of *non*-election pursuant to Section 1111(b) of the Bankruptcy Code. (Doc. Nos. 14-1, 14-2, 14-3). On October 16, 2015, PMI filed amended plans proposing to appoint the Appellee as Plan Administrator to supervise the liquidation of the Appellants' assets. (Doc. No. 12-6, 14-4).

The Bankruptcy Court scheduled a confirmation hearing for November 4, 2015. (Doc. No. 14-18).  The Appellants hired Ms. Iurillo, a local bankruptcy attorney, to oppose PMI's plans at the confirmation hearing. (Doc. No. 14-18, at 9).   At the hearing, the Appellants' existing bankruptcy counsel made an *ore tenus* motion to withdraw from the case, which the Bankruptcy Court granted. (Doc. No. 14-18, at 21-22).   Ms. Iurillo then requested approval to use $50,000.00 from the Appellants' debtor-in-possession accounts to fund her retainer. (Doc. No. 14-18, at 22-23).   The Bankruptcy Court denied her request, in part, and only authorized her to access $15,000.00 from the debtor-in-possession account, with the remainder to be funded by Mr. Pappas. (Doc. No. 14-18, at 41).   Nevertheless, given the transition between counsel, the Bankruptcy Court continued the confirmation hearing, and gave the Appellants until November 12, 2015 to file any amended plans. (Doc. No. 14-18, at 36-37).   Apparently unable to secure the remainder of her requested retainer from Mr. Pappas, Ms. Iurillo subsequently filed motions to withdraw as counsel for the Appellants, which the Bankruptcy Court granted. (Doc. Nos. 9-159, 9-161; 33 Case, Doc. Nos. 4-88, 4-89).   This left the Appellants unrepresented and, as a result, no amended plans were filed before the November 12, 2015 deadline. In light of the foregoing, the UST filed a motion to dismiss or convert the bankruptcy cases due to the Appellants' failure to comply with the August 12, 2015 plan filing deadline. (Doc. No. 9-165; 33 Case, Doc. No. 4-91).

On December 3, 2015, the Bankruptcy Court conducted a hearing at which it considered the various options available to the parties. (Doc. No. 14-19).   Among those options, the Bankruptcy Court determined that the only reasonable solutions were to confirm PMI's plans or to convert the bankruptcy cases to Chapter 7. (Doc. No. 14-19, at

83-84).  Ultimately, the Bankruptcy Court determined that confirmation of PMI's plans was in the best interest of creditors because, among other reasons, PMI proposed to pay nearly 100% of unsecured creditors' claims, which could not be guaranteed in a Chapter 7 liquidation. (Doc. Nos. 14-19, at 86).   On December 8 and 9, 2015, the Bankruptcy Court entered orders confirming PMI's amended plans. (Doc. Nos. 12-8, 14-7).   The Appellants appeal from those orders, as well as from the order denying the UST's motion to dismiss or covert the case. (Doc. Nos. 12-10, 14-8).

## III.    Discussion

As noted above, the Appellants challenge the Bankruptcy Court's decision to confirm PMI's plans of liquidation, rather than convert the cases to chapter 7, for the following three reasons.  First, the Appellants argue that based on the Appellants' failure to file amended plans prior to the November 12, 2015 deadline, the Bankruptcy Court was obligated to dismiss or convert the cases under Section 1112(b) of the Bankruptcy Code. Second, the Appellants argue that the Bankruptcy Court erred by permitting PMI to withdraw its 1111(b) elections months after it had made 1111(b) elections with respect to plans filed in April, 2015.  Third, the Appellants argue that the Bankruptcy Court erred by refusing to allow Ms. Iurillo to access $50,000 from the Appellants' debtor-in-possession accounts to fund her retainer.  The Court will address each argument in turn.

### A.    Dismissal or conversion was *not* required pursuant to Section 1112(b) of the Bankruptcy Code.

Under Section 1112(b)(1) of the Bankruptcy Code,

> on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, *for cause* . . .

5

11 U.S.C. § 1112(b)(1) (emphasis added). For purposes of this subsection, the term 'cause' includes . . . failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). If cause is present, Section 1112(b)(2) of the Bankruptcy Code provides an exception to the rule requiring conversion or dismissal

> if the court finds and specifically identifies *unusual circumstances* establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in section 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

The Appellants argue that the Bankruptcy Court erred by not dismissing or converting the bankruptcy cases after the Appellants failed to file amended chapter 11 plans by the November 12, 2015 deadline set by the Bankruptcy Court. As this argument goes, the language in Section 1112(b)(1) of the Bankruptcy Code is mandatory, i.e. if there is cause for dismissal or conversion, the case must be dismissed or converted. Since there is no dispute that the Appellants failed to file amended plans by the November 12, 2015 deadline, the Appellants argue there was necessarily cause for dismissal or conversion under Section 1112(b)(4)(J). Thus, the Appellants argue that the Bankruptcy Court erred by denying the motion to dismiss or convert, as it did not make any finding that "unusual circumstances" warranted a different result.

Upon review, the plain language of Sections 1112(b)(1) and 1112(b)(4)(J) did not require dismissal or conversion based on the record in this case. Section 1112(b)(4)(J)

only applies if there has been a "failure to file *a* disclosure statement, or to file or confirm *a* plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J) (emphasis added).   As emphasized above, Section 1112(b)(4)(J) does not specifically refer to plans and disclosure statements filed by debtors-in-possession.   Rather, Section 1112(b)(4)(J) refers to plans and disclosure statements generally, thus implying that "cause" exists where *no* plan or disclosure statement is filed by a deadline fixed by the Bankruptcy Code or by the Bankruptcy Court.   Here, the record demonstrates that there were plans and disclosure statements "on file" when the Court considered the motion to dismiss or convert, namely the plans filed by PMI.[1]   Thus, while the Appellants may have missed the November 12, 2015 deadline to amend their chapter 11 plans, there were nevertheless plans and disclosure statements before the Bankruptcy Court when it conducted the December 3, 2015 hearing.   Accordingly, by its own terms, Section 1112(b)(4)(J) did not require dismissal or conversion.

### B.     The Bankruptcy Court did not err by permitting PMI to withdraw its 1111(b) elections

Section 1111(b)(1)(A)(i) of the Bankruptcy Code provides that

[a] claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, *unless (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection.*

11 U.S.C. § 1111(b)(1)(A)(i) (emphasis added).   Section 1111(b)(2) of the Bankruptcy Code, in turn, states that "[i]f such an election is made, then notwithstanding section

---

[1] Moreover, as the Appellee points out in its brief, the Appellants' existing plans of reorganization were technically still before the Bankruptcy Court when it conducted the December 3, 2015 hearing.

506(a) of this title, such claim is a secured claim to the extent that such claim is allowed."

11 U.S.C. § 1111(b)(2). In practice, by making an election under Section 1111(b)(2) of

the Bankruptcy Code, an undersecured creditor elects to forego the unsecured portion of

its claim, and instead has the entire amount of its claim treated as fully secured. *See*

Steven R. Haydon, *The 1111(b)(2) Election: A Primer*, 13 Bankr. Dev. J. 99, 107 (Winter

1996). Importantly, in so doing, the undersecured creditor gives up any distribution it may

have been entitled to receive on account of its unsecured claim, and gives up its right to

vote on the plan as an unsecured creditor. *Id.* at 115.

Federal Rule of Bankruptcy Procedure 3014 states that "[a]n election of application

of § 1111(b)(2) of the Code by a class of secured creditors in a chapter 9 or 11 case may

be made at any time prior to the conclusion of the hearing on the disclosure statement or

within such later time as the court may fix." FED. R. BANKR. P. 3014. "The election, if made

by the majorities required by § 1111(b)(1)(A)(i), shall be binding on all members of the

class with respect to the plan." *Id.* Courts have interpreted Rule 3014 to permit creditors

to change an 1111(b) election "upon debtors' modification or alteration of the plans." *In*

*re Century Glove, Inc.*, 74 B.R. 958, 961 (Bankr. D. Del. 1987). This is because "a

secured creditor class must know the prospects of its treatment under the plan before it

can intelligently determine its rights under § 1111(b)." *Id.*

Here, the issue is whether the amendments to the Appellants' chapter 11 plans

constituted "material alteration[s]" of the plans, such that PMI was authorized to withdraw

its previous 1111(b) elections. Upon review, the Court believes that the amendments to

the Appellants' plans constituted material alterations. On this point, the plans filed in April,

2015 proposed to bifurcate PMI's secured claims into secured and unsecured

components, with the secured portions to be paid over 15 to 30 year periods at 5.25% interest and the unsecured portions to be treated as general unsecured claims. (Doc. Nos. 12-13, 14-12, 14-16).   After PMI made 1111(b) elections, the Appellants filed amended plans through which they proposed to surrender several parcels of property to PMI in full satisfaction of the debts secured by those properties, and to pay the remaining amounts over time. (Doc. Nos. 12-19, 12-22, 12-23).  In essence, rather than simply treat PMI's claims as "fully secured," the Appellants modified their plans to force PMI to accept its collateral in full satisfaction of those claims; with no allowance for any unsecured deficiency.  This is the essence of a "material alteration" and, as a result, PMI's 1111(b) elections were not binding with respect to the plans filed in July and September, 2015. Thus, the Bankruptcy Court did not err in permitting PMI to withdraw its 1111(b) elections.

### C.    The Bankruptcy Court did not abuse its discretion by denying Ms. Iurillo's request to access $50,000 from the Appellants' debtor-in-possession accounts.

For its final argument, the Appellants argue that the Bankruptcy Court abused its discretion by refusing to allow Ms. Iurillo to use $50,000 from the debtor-in-possession accounts to pay her retainer.   In making this argument, the Appellants concede that bankruptcy judges have wide discretion to determine how estate professionals are paid. Nevertheless, the Appellants argue that the Bankruptcy Court abused its discretion by limiting Ms. Iurillo's access to the debtor-in-possession accounts due to the exigency created by the imminent plan amendment deadline, coupled with the fact that the Appellants, as business entities, could not represent themselves *pro se*.  Upon review, the Bankruptcy Court's decision was both reasonable and appropriate.  The Bankruptcy Court was essentially faced with three options: (1) convert the cases to chapter 7; (2) confirm PMI's plans, which proposed to pay nearly 100% of unsecured claims; or (3) allow

the estates to expend $50,000 to propose amended competing plans.   Clearly, the third option was the least desirable, as it would have diminished the estates' cash position without providing creditors with any guarantee that the funds could be recovered.   Thus, the Bankruptcy Court's decision to restrict Ms. Iurillo's access to the debtor-in-possession accounts was proper.

## IV.   Conclusion

Accordingly, it is

**ORDERED** that the Bankruptcy Court's orders are **AFFIRMED**.  The Clerk of Court is directed to enter judgment for the Appellee and to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 16th day of August, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Parties and Counsel of Record